# In the United States Court of Federal Claims

No. 21-1991
(Filed under seal: June 7, 2022)
(Reissued for Publication: July 11, 2022)[1]

```
**************************************
ZEROAVIA, INC.,                      *
                                     *
                Plaintiff,           *
                                     *
        v.                           *
                                     *
THE UNITED STATES,                   *
                                     *
                Defendant.           *
**************************************
```

Post-Award Bid Protest; Motion to Dismiss; RCFC 12(b)(1); Standing; Competitive Range; Substantial Chance for Award.

*William M. Weisberg*, Law Offices of William Weisberg PLLC, McLean, VA, counsel for Plaintiff.

*Mariana Teresa Acevedo*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant.

## OPINION AND ORDER

**DIETZ, Judge.**

Plaintiff, ZeroAvia, Inc. ("ZeroAvia"), protests a decision by the National Aeronautics and Space Administration ("NASA") to exclude ZeroAvia from the competitive range in a multiple award procurement for an electric-powered aircraft demonstration. The government asserts that ZeroAvia lacks standing to bring its protest and moves to dismiss its complaint under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims. Because ZeroAvia has failed to provide sufficient factual support to demonstrate that it had a substantial chance for award, the Court finds that ZeroAvia has failed to meet its burden to establish that it has standing to bring its protest. Accordingly, the government's motion to dismiss is **GRANTED**.

## I.        BACKGROUND

NASA issued a solicitation for the development of an electrified powertrain flight demonstration to accelerate integration of electrified aircraft propulsion technologies into the United States aviation industry. Admin. R. 281-83, 735, ECF No. 12 [hereinafter AR]. The

---

[1] This Opinion and Order was filed under seal on June 7, 2022, *see* ECF No. 22, in accordance with the Protective Order entered on October 13, 2021. *See* ECF No. 10. The parties were given an opportunity to identify protected information, including source selection, propriety information, and confidential information, for redaction. The parties filed a joint status report proposing redactions on June 28, 2022. *See* ECF No. 26. All redactions were unopposed. *Id.* at 1-2. The Court accepts all proposed redactions. All redactions have been blackened out.

solicitation called for a competitively negotiated procurement in accordance with Federal Acquisition Regulation ("FAR") Part 15. AR 682. NASA planned to award a single contract or multiple contracts "to the responsible [o]fferor [or offerors] whose proposal conforms to the solicitation and that will be most advantageous to the [g]overnment[.]" AR 743, 748-50. NASA further explained that its tradeoff process would "us[e] the best value continuum where all evaluation factors other than price, when combined, are significantly more important than price." AR 750. The solicitation required a proposal to be submitted in three volumes: Mission Suitability, Past Performance, and Price. AR 735. The Mission Suitability evaluation factor is the focus of this protest.

The solicitation provided that the Mission Suitability Factor "will be numerically weighted and scored on a 1000-point scale." AR 743. The Mission Suitability Factor comprised five subfactors, which were each assigned a point weight—Project Objectives (100 points); Statement of Work (300 points); Capability and Technology Development (250 points); Data Collection and Technical Performance Validation (250 points); and Cost, Schedule, Risk, and Technical Performance Management (100 points). AR 745. NASA established specific page limits for the overall mission suitability volume, as well as for each subfactor. AR 736, 999-1000. In evaluating the subfactors, the Source Evaluation Board ("SEB") would independently evaluate each offeror's mission suitability volume to identify all significant strengths, strengths, weaknesses, significant weaknesses, and deficiencies. AR 743-44. Each subfactor would then be assigned an adjectival rating with an associated percentile range—Excellent (91-100), Very Good (71-90), Good (51-70), Fair (31-50), Poor (0-30). AR 744. The adjectival rating percentages would be "applied to the subfactor weight to determine the point score" for each subfactor. *Id*. The total score for the Mission Suitability Factor would "be determined by adding the point scores received for each Mission Suitability subfactor together." *Id*.

NASA received seven proposals, of which six were evaluated by the SEB.[2] AR 7724-25, 7732-33. ZeroAvia, a company developing a hydrogen powered zero emissions flight system, submitted a proposal. Compl. at 1, ECF No. 1; *see also id.* ¶ 5. Out of the six proposals evaluated, ZeroAvia received the ████ score for the Mission Suitability Factor—a score of ██ out of 1000 possible points. AR 7762, 7792, 7847. The contracting officer established a competitive range consisting of the four highest rated proposals. AR 7805-06. The offerors selected for the competitive range received scores ranging from 876 to 920 points. *Id*. After NASA notified ZeroAvia that it was excluded from the competitive range, ZeroAvia requested a debriefing in accordance with FAR 15.505. AR 7829, 7840-47; *see* Compl. at 2. At the debriefing, NASA informed ZeroAvia that it was excluded from the competitive range because its proposal was assessed ████ weaknesses and ██ significant weaknesses for the Mission Suitability Factor. Compl. at 2; *see* AR 7840-47.

On October 8, 2021, ZeroAvia filed a complaint in this Court challenging its exclusion from the competitive range. *See* Compl. at 8-9. The Court conducted an initial status conference shortly thereafter. *See* Status Conf. Order, ECF No. 8. At the status conference, the government proposed that it proceed with filing a motion to dismiss in advance of filing the administrative

---

[2] NASA eliminated one of the seven proposals due to its noncompliance with the solicitation requirements. *See* AR 7732, 7805.

record. *See* Oct. 13, 2021 Status Conf. at 9:42-11:24.[3] The government argued that there is no need to file the administrative record because ZeroAvia lacks standing to pursue its protest. *See id.* at 11:30-11:54. ZeroAvia "vehemently" objected to the government's proposed approach and argued that access to the administrative record was necessary for it to "respond intelligently" to the government's motion to dismiss. *Id.* at 12:08-13:40, 20:58-23:30, 24:08-24:41. The Court agreed with ZeroAvia and ordered the government to file the administrative record prior to filing its motion to dismiss. *See* Order at 1, ECF No. 9. The government filed the administrative record on October 22, 2021. *See* AR. Subsequently, the government filed its motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). *See* Def.'s Mot. to Dismiss, ECF No. 13 [hereinafter Def.'s Mot.]. The government's motion is fully briefed, and the Court held oral argument on January 26, 2022.

## II.    LEGAL STANDARDS

A motion to dismiss for lack of standing pursuant to RCFC 12(b)(1) questions whether the court has jurisdiction to adjudicate the merits of the underlying dispute. *Warth v. Seldin*, 422 U.S. 490, 498 (1975); RCFC 12(b)(1). The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). "To survive a motion to dismiss for lack of standing, a complaint must contain sufficient factual matter that would plausibly establish standing if accepted as true." *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1355 (Fed. Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations and brackets omitted). Conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss. *Dyck v. Albertelli Law*, 98 Fed. Cl. 624, 630 (2011). The Supreme Court has articulated that while the pleading standard does not require "detailed factual allegations," it does require more than "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court should only assume the veracity of factual allegations where they are well-pleaded. *Iqbal*, 556 U.S. at 664. If the Court determines that a protestor lacks standing then it lacks jurisdiction, and the Court must dismiss the case. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

This Court has jurisdiction under the Tucker Act to render judgment on a bid protest action brought "by an *interested party* objecting to . . . any alleged violation of statute or regulation in connection with a procurement." 28 U.S.C. § 1491(b)(1) (emphasis added). Before reaching the merits, the Court must first determine whether the protestor has standing to challenge the agency's award decision. *Orbital Maint. & Constr. Co. v. United States*, 145 Fed. Cl. 71, 74 (2019); *see Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (highlighting that "standing is a threshold jurisdictional issue"). A protestor eliminated from the competitive range is not necessarily precluded from establishing standing. *See Chenega Mgmt., LLC v. United States*, 96 Fed. Cl. 556, 571 (2010) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334 (Fed. Cir. 2001)). A protestor must show that it meets the standing requirements of § 1491(b)(1), which are "more

---

[3] The Court cites to the timestamp for the electronic digital recording ("EDR") for the October 13, 2021 status conference.

stringent" than the standing requirements imposed by Article III of the United States Constitution. *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017).

To meet the more stringent standing requirements, a protestor must make two separate showings—that it is an interested party and that it was prejudiced by a significant error in the procurement process. *Id.* To satisfy the interested party requirement, a protester must show that it is an actual or prospective bidder who possesses the requisite direct economic interest. *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009). A protestor has a direct economic interest if it shows that it had a substantial chance of winning the contract. *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358-59 (Fed. Cir. 2018). For the prejudice requirement, the protestor must establish that, but for the alleged procurement error, the protestor would have had a substantial chance of receiving the contract award. *Diaz*, 853 F.3d at 1358; *see Info. Tech. & Applications v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (highlighting that the "prejudice issue must be reached before addressing the merits"). "Despite the potential relevance of prejudice in determining substantial chance, direct economic interest should still be evaluated separately from prejudice." *Veteran Shredding, LLC v. United States*, 140 Fed. Cl. 759, 765 (2018) (quoting *CliniComp Int'l*, 904 F.3d at 1358-59); *Universal Marine Co. K.S.C. v. United States*, 120 Fed. Cl. 240, 248 (2015) ("[A] proper standing inquiry must not conflate the requirement of 'direct economic interest' with prejudicial error.") (citing *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1380 (Fed. Cir. 2009)).

## III.   DISCUSSION

ZeroAvia challenges its exclusion from the competitive range based on various theories as to why NASA's evaluation was flawed. *See* Compl. ¶¶ 10-21. The government moves to dismiss ZeroAvia's complaint for lack of standing arguing that its challenges are "based on speculative alleged errors" in NASA's evaluation and that its complaint "does not contain any specific allegations regarding why the agency's evaluation was incorrect let alone why it has standing here." Def.'s Mot. at 13, 16; Def.'s Reply at 3, ECF No. 15. When confronted with the government's motion to dismiss, ZeroAvia had an opportunity to defend its complaint and rebut the assertion that it lacks standing. However, ZeroAvia failed to seize this opportunity to explain how the information in its complaint satisfies its burden to demonstrate that it has standing. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 1-5, ECF No. 14 [hereinafter Pl.'s Resp.]. Because the Court finds that ZeroAvia's allegations of procurement errors do not contain sufficient factual support to demonstrate that it had a substantial chance of receiving an award, ZeroAvia fails to meet its burden to establish that it has standing.

ZeroAvia's complaint is plagued by broad, unsupported allegations of procurement errors that are not sufficient to establish standing. A well-pled allegation of a procurement error may confer standing to a protestor. *See, e.g.*, *Digitalis Educ. Sols., Inc. v. United States*, 97 Fed. Cl. 89, 94 (2011), *aff'd*, 664 F.3d 1380 (Fed. Cir. 2012); *Orbital Maint.*, 145 Fed. Cl. at 75-76; *NVE, Inc. v. United States*, 121 Fed. Cl. 169, 180 (2015); *Beta Analytics Int'l, Inc. v. United States*, 67 Fed. Cl. 384, 395-96 (2005). However, allegations based upon conjecture are not enough to show that a protestor had a substantial chance of winning the award. *See HVF West, LLC v. United States*, 846 F. App'x 896, 898-99 (Fed. Cir. 2021) (citing *Bannum, Inc. v. United States*, 404

F.3d 1346, 1358 (Fed. Cir. 2005)). ZeroAvia vaguely asserts that "[f]or each and every one of the identified weaknesses or deficiencies in [ZeroAvia's] proposal, [ZeroAvia] either did, in fact, provide the information identified, and/or was being judged against an evaluation factor not set forth in the solicitation." Compl. ¶ 16. ZeroAvia further states that "NASA indicated to [ZeroAvia] that [it] failed to provide sufficient detail in several areas required by the solicitation[;]" however, ZeroAvia asserts that "each and every one of those areas was addressed in one or more of: [ZeroAvia's] proposal; in oral presentations; or in questions and answers with NASA during the procurement." *Id.* ¶ 13. The fatal flaw with these allegations is that they lack factual support. For instance, ZeroAvia does not identify any particular weakness or deficiency that was assessed as a result of an alleged procurement error despite having access to such information as a result of the debriefing. *See, e.g.*, AR 7843-47 (debriefed evaluation findings for ZeroAvia's mission suitability volume). ZeroAvia likewise does not reference the solicitation requirements or its proposal contents to demonstrate that it actually provided the required information or that NASA employed unstated criteria in evaluating its proposal. Further, despite the Court ordering the government to produce the administrative record in advance of filing its motion to dismiss to allow ZeroAvia to "respond intelligently," Status Conf. at 12:08-13:40, ZeroAvia did not cite to the administrative record a single time in its response. *See* Pl.'s Resp. at 1-5. When faced with the government's challenges to its standing, it is not enough for ZeroAvia to merely rely on the bare allegations of procurement errors in its complaint. Instead, to meet its burden, ZeroAvia must provide relevant, competent proof to establish that it has standing. *RMGS, Inc. v. United States*, 140 Fed. Cl. 728, 736 (2018) (citing *Reynolds*, 846 F.2d at 748).

ZeroAvia's complaint contains allegations that are arguably more specific but similarly lack sufficient factual support to establish standing. ZeroAvia argues that NASA employed unstated evaluation criteria when it assessed weaknesses to its proposal due to "██████████████████████████████████████████████" Compl. ¶ 14. ZeroAvia argues that while "█████████ [was] not an evaluation criterion in the solicitation[,]" it "clearly explained to NASA, both in the proposal and in a variety of pre-procurement briefings, how █████████ ██████████ would be provided." *Id*. Yet, ZeroAvia provides no factual support for its allegations. For instance, ZeroAvia fails to identify any particular weakness that was assessed because of the alleged unstated criteria for █████████ or to reference any portions of its proposal that explain how █████████ would be provided. ZeroAvia also argues that NASA employed unstated evaluation criteria when it assessed a significant weakness that "█████████████████████████" *Id*. ¶ 15. ZeroAvia contends that it "demonstrate[d] what data it would collect and how[,]" but it was "criticized for not supporting a detailed NASA modeling effort, when detailed information about that effort was not part of the solicitation." *Id*. Yet, ZeroAvia again provides no factual support for its allegation.

ZeroAvia's allegation of unequal treatment also lacks factual support. ZeroAvia states that "[c]ertain of NASA's identified weaknesses and deficiencies involved a level of detail in [ZeroAvia's] proposal that was driven by the proposal page limitation" and that "no offerors could meet the standard NASA set out in its evaluation of [ZeroAvia] and still remain within the page limitations." Compl. ¶ 17. ZeroAvia alleges that "NASA did not impose the same

evaluation penalties on the offerors included in the competitive range as it did on [ZeroAvia]" based on its "*information and belief*." *Id.* at 3-4 (emphasis added). ZeroAvia cannot rely on this boilerplate language to sustain its claim when ZeroAvia provides no details of the information to which it has access and on which it relies to form its belief. ZeroAvia provides no explanation for its broad assertion that no offeror could meet the page limit and also provide the level of detail required by NASA in its evaluation. Additionally, ZeroAvia does not attempt to illustrate a lack of detail in the other offerors' proposals. ZeroAvia's complaint merely states that "[h]ad [ZeroAvia] received the same page limit 'pass' as other offerors, it would have been included in the competitive range, and eventually have received a contract as one of the offerors providing the best value to the [g]overnment." *Id.* at 4. This claim is highly speculative and devoid of any factual support. Simply alleging that NASA treated ZeroAvia unequally by applying a different standard when assessing the level of detail in its proposal without any factual support is mere conjecture and not enough to confer standing. *See Orbital Maint.*, 145 Fed. Cl. at 76 (holding the protestor lacked standing because its "highly speculative" arguments were not enough to confer standing); *SOS Int'l LLC v. United States*, 127 Fed. Cl. 576, 588 (2016) (finding the protestor's allegations as merely speculative and inadequate to support standing).[4]

ZeroAvia's claim that NASA failed to engage in clarifications and meaningful discussions in violation of the FAR is also too speculative and contradicted by the record. ZeroAvia asserts that NASA failed to "engage in clarification or communication exchanges . . . by failing to notify [ZeroAvia] of purported disqualifying but easily explainable issues in its proposal." Compl. at 4; *id.* ¶ 20. This argument is unsuccessful for two reasons. First, NASA did, in fact, seek clarifications from ZeroAvia with respect to its proposal. *See* AR 6657-86, 6795-834, 6928-47, 7078-164, 7255-304, 7429-77. Second, ZeroAvia grossly mischaracterizes the purpose of clarifications under FAR 15.306(a)(2). *See, e.g.*, Compl. at 3 (claiming that "various NASA concerns" could have "easily" been clarified through clarifications). It is well-established that clarifications under FAR 15.306(a)(2) provide an offeror the opportunity to "resolve minor or clerical errors" only. *See also Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 998 (Fed. Cir. 2018) ("Clarifications are not to be used to cure proposal deficiencies or material omissions, materially alter the technical or cost elements of the proposal, or otherwise revise the proposal."). ZeroAvia does not identify any weakness that could reasonably be considered a minor omission or clerical error. To the contrary, the weaknesses identified in ZeroAvia's proposal are clearly not minor omissions or clerical errors and instead result from NASA's determination that its proposal lacked detail. *See* AR 744, 7491, 7734, 7759-62. ZeroAvia speculates that "[h]ad NASA acted in [*sic*] reasonably it could easily have clarified its proposal, even without providing a fully revised proposal, and thus would have been scored highly enough to be included in the competitive range[.]" Compl. at 2. This argument is nothing more than mere speculation.

---

[4] ZeroAvia's claim that NASA treated ZeroAvia unequally because it did not provide ZeroAvia with the same "page limit pass" is also contradicted by the administrative record. All offerors were subject to the same page limitations set forth in the solicitation, and all offerors submitted proposals within such page limitations. *See* AR 999-1000, 2201-938, 3734-78, 3782-4071, 4140-282, 5566-6144, 6206-422.

ZeroAvia's assertion that NASA failed to conduct meaningful discussions under FAR 15.306(d)(3) is also unavailing. *See* Compl. ¶ 20. ZeroAvia contends that discussions "would have resulted in [ZeroAvia] being selected as one of the offerors providing the best value to the government." *Id.* The problem with this argument is that ZeroAvia was not entitled to discussions with NASA because the solicitation stated that "[t]he government intends to evaluate offers and award a contract *without discussions*." AR 1006 (emphasis added). Further, the solicitation made clear that discussions, if any, would be limited to offerors selected for the competitive range. *See* AR 1504. Because ZeroAvia received the ██████ score and was not included in the competitive range, it was not eligible for discussions. Therefore, ZeroAvia's assertion that it could have corrected its weaknesses through discussions is, at best, mere speculation.

In its response to the government's motion to dismiss, ZeroAvia argues that, for the Court to find that ZeroAvia has failed to demonstrate that it had a substantial chance of award, the Court would be required "to actively rule on each of the factual and legal issues raised in the protest, when those issues have not been fully briefed or argued[.]" Pl.'s Resp. at 5. This is not the case. The Court's conclusion that ZeroAvia has not met its burden to demonstrate that it had a substantial chance of award is not a ruling on the merits of the issues raised but instead a finding that ZeroAvia has not provided sufficient factual support for its alleged procurement errors to establish that it has standing to bring its protest. *See Media Techns. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1370 (Fed. Cir. 2003) ("Because standing is jurisdictional, lack of standing precludes a ruling on the merits."). Standing is determined "as of the commencement of suit," *Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005), and ZeroAvia bears the burden to establish that it has standing as part of its complaint. *See Crow Creek Sioux Tribe*, 900 F.3d at 1355. ZeroAvia has failed to meet its burden. To make matters worse, despite the Court ordering the government to make the administrative record available in advance of filing its motion to dismiss, ZeroAvia failed to utilize the administrative record to rebut the government's challenges and demonstrate how its complaint establishes that it has standing. Consequently, when the Court is forced to parse through a complaint riddled with unsupported allegations, dismissal for lack of standing is an inevitable outcome.

## IV.    CONCLUSION

For the reasons set forth above, the government's motion to dismiss pursuant to RCFC 12(b)(1) is **GRANTED**. ZeroAvia's complaint is **DISMISSED WITHOUT PREJUDICE.** The Clerk is **DIRECTED** to enter judgment.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge

7